IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**CHRISTOPHER LEE JACKSON,**
         **Plaintiff,**

**v.**                                                    **Case No: 3:08cv408/RV/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
         **Defendant.**

_____

**REPORT AND RECOMMENDATION**

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Jackson's application for disability insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff, Christopher Lee Jackson, filed applications for benefits claiming an onset of disability as of August 10, 2004. The applications were denied initially and on reconsideration, and Mr. Jackson requested a hearing before an administrative law judge (ALJ). A hearing was held on October 5, 2007 at which Mr. Jackson was informed of his right to retain counsel and was offered time to retain one, which he declined. He testified at the hearing, as did a vocational expert. The ALJ entered an unfavorable decision (tr. 30-42) and Mr. Jackson requested review by the Appeals Council without submitting additional evidence. The Appeals Council declined review (tr. 1-3). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).

This timely appeal followed.

## FINDINGS OF THE ALJ

The ALJ found that Mr. Jackson had severe impairments of lumbar degenerative disc disease, arthritis, and obesity, but that he did not have an impairment or combination of impairments that met or equaled one of the impairments listed in 20 C. F. R. Part 404, Subpart P; that he had the residual functional capacity to perform the duties of light work with minimal restrictions; that he was unable to perform the duties of his prior relevant work in a parts department which required constant standing and walking; that he was a younger individual with limited education; that there were jobs in significant numbers in the economy that he could perform; and that he was not under a disability as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits.  *See Moore,* 405 F.3d at 1211;  20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB).  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore,* 405 F.3d at 1211 (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir.1985)).  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir.

1987). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

On April 23, 2002, more than two years prior to his claimed disability onset date, Mr. Jackson saw Thomas J. Manski, M.D., with complaints of moderate to severe right low back pain. Mr. Jackson reported that he experienced pain in the right side of his back and his right hip, which worsened after working in a tire store and moving furniture. He had been given pain medications, muscle relaxers, anti-inflammatory drugs, and a steroid injection in the buttock or lower back, without lasting relief. On examination, Mr. Jackson had no significant tenderness over his lower lumbosacral spine. He had some mild to moderate paraspinal muscle spasms in the lower back. Mr. Jackson had full muscle strength in all areas, and a sensory examination of the lower extremities was grossly intact except for some patchy hypertesias in the right foot. Straight leg raises and crossed straight leg raises were negative. Mr. Jackson had a medium-strided, medium-paced, slightly antalgic gait. Dr. Manski noted that magnetic resonance imaging (MRI) of Mr. Jackson's lumbosacral spine performed 12 days earlier revealed a small disc bulge and left lateral foraminal disc protrusion at L2-3 without definite nerve root or cord impingement, and some mild disc bulging at L3-4, L4-5, and L5-S1 without significant nerve root or spinal canal compromise. Dr. Manski assessed chronic right low back pain getting progressively worse, particularly with activities like flexing forward at the waist or lifting. Dr. Manski referred Mr. Jackson to a pain clinic for conservative treatment measures (tr. 195-97). The record does not indicate any follow-up.

Four years later, on April 6, 2006, lumbar x-rays taken at the North Okaloosa Medical Center (NOMC) revealed mild to moderate disc space narrowing with mild

endplate spurring of L1-2 and L2-3, but were otherwise negative. An MRI revealed disc space narrowing with decreased signal intensity of the disc, mild inferior neural foraminal encroachment greater on the left than the right, and mild endplate signal changes consistent with degenerative disc disease, and moderate sized bulging disc at L2-3 (tr. 152-53).

On October 1, 2006, Mr. Jackson returned to NOMC with a lacerated left index finger. A physical examination revealed that Mr. Jackson was in no acute distress. His sensation and motor function were intact. Mr. Jackson's neck and back were normal and non-tender. The treatment provider sutured Mr. Jackson's laceration (tr. 155-64). Ten days later, Mr. Jackson returned for suture removal. Mr. Jackson ambulated independently and was noted to perform activities of daily living independently (tr. 190-94).

Jerold A. Derkaz, M.D., performed a consultative examination on December 21, 2006. Mr. Jackson complained of a several year history of low back pain, occasional exertional dyspnea, and generalized weakness. He denied any previous injury to his back. He smoked one package of cigarettes per day. He was not under the care of a medical doctor and did not take any medications. He reported no recent history of blurred vision, eye pain, itching eyes, burning eyes, hearing loss, tinnitus, ear discharge, earaches, dizziness, vertigo, loss of balance, active dental problems, heartburn, dyspepsia, food intolerances, belching, joint swelling, or joint deformities. On examination, Mr. Jackson's cervical spine was non-tender with a full range of motion and no abnormal curvatures, his thoracic spine had no point tenderness or abnormal curvatures, and his lumbar spine had point tenderness to moderate palpation over L3-4, and a slight decrease in range of motion with no abnormal curvatures. He had a steady gait, required no assistance for ambulation, and was able to tandem, heel and toe walk. Sitting and supine straight leg raises were negative. The sacrum showed no deformities and no point tenderness, the coccyx was non-tender, and the sacroiliac joints showed a full range of motion without point

tenderness. Examination of the extremities revealed no tenderness of any joint, and full range of motion of all joints, including the elbows, hips, and knees. Mr. Jackson had full grip strength bilaterally, and was neurologically intact. Dr. Derkaz also reviewed the lumbar x-rays and MRI of April 2006 and assessed lumbar degenerative disc disease. He opined that Mr. Jackson was restricted from lifting over 20 pounds and engaging in repetitive bending, pushing, pulling, squatting, kneeling, or crawling, and that he should avoid prolonged sitting or standing without benefit of rest and position change. Dr. Derkaz noted that a course of physical therapy and anti-inflammatory medications could be of benefit for pain management (tr. 166-72).

C. W. Koulisis, M.D., an orthopedic surgeon, performed a consultative examination after reviewing in detail the medical records of Drs. Derkaz and Manski and the lumbar spine MRI. Mr. Jackson's chief complaint was back pain, which he had experienced for 20 years. He also reported symptoms associated with gastroesophageal reflux disease, but was taking no medications. He denied alcohol use, but stated that he smoked one package of cigarettes per day. There was full range of motion in the back, and full motor strength and intact sensation in the cervical and thoracolumbar spines. The thoracolumbar spine had negative tension signs sitting and lying bilaterally. He arose without difficulty and had normal cervical lordosis, thoracic kyphosis, and lumbar lordosis upon standing. He also had a normal gait and was able to heel, toe and tandem walk without difficulty. The elbows were stable to all stresses, and there was smooth and symmetric range of motion in the hips. Mr. Jackson's ankles and feet were stable to all stresses throughout the range of motion. There was full range of motion of the spine, shoulders, elbows, wrists, hands, hips, knees, and ankles. Dr. Koulisis stated that Mr. Jackson had significant pain behaviors related to his low back, and noted 5/5 Waddell's[1] on lumbar spine examination. Dr. Koulisis also completed a Medical

---

[1] Waddell's signs are a group of physical signs that may indicate non-organic or psychological component to chronic low back pain and that have historically been used to detect malingering in patients with back pain.

*Case No: 3:08cv408/RV/MD*

Source Statement of Ability to Do Work-Related Activities (Physical) in which he opined that Mr. Jackson could only occasionally be exposed to vibrations. He imposed no other limitations (tr. 199-204).

## PLAINTIFF'S TESTIMONY

Mr. Jackson testified at an administrative hearing held on October 5, 2007. He last worked in a bicycle parts shop and at Wal-Mart. He stopped working at the bicycle parts shop in September 2005 because he could not stand on the concrete floor all day due to severe lower back pain. He could work with his hands but he experienced numbness in his right hand due to arthritis in his right elbow. He rated his pain at 8 or 9 out of 10 on a daily basis, and his back pain kept him awake at night. His back was twice as bad as it had been the previous year. Daily activities such as showering, dressing, and undressing exacerbated his pain. He was not being treated for his pain because he did not have insurance, and he took no medications because he could not afford them. He fed, bathed, and dressed himself. He also shopped for groceries, cooked, mowed the yard when he could, and performed light housework including sweeping and vacuuming. He could walk only one block, stand for 30 minutes, sit for 30 minutes, and lift 20 pounds. He could push, pull, climb stairs, and pick up small items with his hands, but reaching overhead bothered him, and it was difficult to bend over (tr. 9-16).

## DISCUSSION

Mr. Jackson argues that the ALJ erred in failing to find him disabled, and that he was disabled from his onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical condition, age, education, work

experience, and residual functional capacity, is supported by substantial evidence in the record.

In his memorandum Mr. Jackson contends that he is disabled because his back pain is severe, increasingly so with time, and he cannot do many of the things he used to do.  Because he is proceeding *pro se*, the court has carefully reviewed the record to determine whether there are any specific identifiable errors on the ALJ's part.  The court has found none.  As noted above, this court's function is limited.  The court does not determine whether the ALJ was "right" or "wrong" in making his decision, only whether he followed the law and had substantial record evidence to support his decision.  The court must affirm the ALJ's decision if it was legally correct and was supported by substantial record evidence.

The medical record establishes that Mr. Jackson has back problems, and the ALJ found them to be severe within the meaning of the regulations.  However, "severe" means only that the abnormality is more than "slight" so as to affect a person's ability to work. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  It does not mean "disabling."  The question for the ALJ was whether Mr. Jackson's severe problems were disabling.  The ALJ held that they were not.  He noted that lumbar x-rays revealed only mild to moderate degenerative changes, and findings on MRI were also described as mild (tr. 38, 152-53).  Straight leg raising was consistently negative and physical examinations were normal but for Mr. Jackson's subjective complaints of pain.  Dr. Koulisis found signs of malingering (tr. 39, 201-02).  Finally, there was a four year gap in treatment, and Mr. Jackson used no pain medication (tr. 12, 38, 40).

Mr. Jackson's claim is based almost entirely on his subjective complaints of pain.  As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably

expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[2] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

"Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is

---

[2] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

*Case No: 3:08cv408/RV/MD*

a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

Here, neither Mr. Jackson's treating physician nor the two examining physicians placed significant restrictions on his activities. Nothing in any of the x-rays, MRI's or physical examinations revealed more then mild evidence of objective findings. Indeed, Mr. Jackson's physical examinations were essentially normal. The ALJ's decision was amply supported by substantial record evidence. The court has not found anything in the administrative record to suggest that Mr. Jackson was given anything other than a full and fair hearing and consideration of his complaints. There was no error on the ALJ's part, and Mr. Jackson is not entitled to reversal.

Accordingly, it is respectfully RECOMMENDED that the Commissioner's decision be AFFIRMED, that judgment be entered in favor of the defendant, and that the clerk be directed to close the file.

At Pensacola, Florida this 30th day of September, 2009.

/s/ *Miles Davis*
        **MILES DAVIS**
        **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988).**